IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARY CHRISTINE K.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-004-CJP**[2] |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability benefits in April 2015, alleging disability as of January 1, 2011. After holding an evidentiary hearing, ALJ Jason R. Yoder denied the application on September 13, 2017. (Tr. 15-26). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 24.

this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in the weight he assigned to the opinions of the state agency reviewers and the examining consultant.

2. The ALJ erred in assessing her subjective allegations.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step

three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

**The Decision of the ALJ**

ALJ Yoder followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that she was insured for DIB through June 30, 2015. He found that plaintiff had severe impairments of minimal cervical spine degenerative disc disease, lumbar spine degenerative disc disease, diabetes, obesity, COPD, fatty liver disease, arthritis, hypertension; and headaches.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to sitting 6 out of 8 hours; standing/walking 4 out of 8 hours; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; frequent balancing; occasional stooping, kneeling, crouching, and crawling; no concentrated exposure to temperature extremes, vibration, pulmonary irritants, loud noises, or extraordinary bright light; and not even moderate exposure to hazards such as unprotected heights or moving machinery.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born in 1968 and was almost 43 years old on the alleged date of onset. (Tr. 247). She had worked as a certified nursing assistant, residential case manager, personal assistant, and deli worker. (Tr. 253).

In May 2015, plaintiff reported that she could only do chores around the house for 20 minutes and then had to sit or lie down. Sitting for long periods was unbearable. She spent a lot of her time lying down. She was unable to squat or kneel. She could bend only halfway. Her liver condition limited the amount of pain medication she could take. (Tr. 280-287). In August 2015, she said that it took her all day to finish chores that used to take her only an hour or two because she had to take so many breaks. Sometimes her pain was unbearable and she could not sleep or think. (Tr. 306).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in July 2017. (Tr. 34).

Plaintiff was 5' 3½" tall and weighed 270 pounds. She had lost 70 pounds, which helped her breathing. (Tr. 53). She no longer had to take medication for diabetes. (Tr. 56).

Plaintiff testified that her pain was mostly in her back. She had pain in her

upper and lower back, right hip, and the bottom of her feet. Any kind of activity using her arms, walking, or bending made her pain worse. On a lot days, she felt sick, like she had the flu. She also had COPD which caused her to be short of breath. She could only take pain medication a few times a month because of her liver. (Tr. 49-52). Her breathing had gotten better since she quit smoking. She still had to use a nebulizer, particularly if she were going to do anything aerobic. She also had neck pain and migraine headaches. She thought that her headaches were related to neck pain. When she had a headache, she might have to lie down for 1 to 3 hours. (Tr. 65-68).

Plaintiff used a computer at home for short periods of time. She used it to write short stories and journal entries. She liked to cross-stitch and embroider. (Tr. 62-63). She generally spent anywhere from 2 hours to the whole day lying down. (Tr. 68).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but she could do other jobs at the light exertional level. She also identified jobs that plaintiff could do at the sedentary level. (Tr. 70-76).

**3. Medical Records**

Plaintiff received primary health care at Clay Medical Center for some period of time. She was seen by Dr. Sweet Friend there. The alleged date of onset is January 1, 2011. In February 2011, her doctor noted that her blood sugars were

much improved. The exam of her neck and back was normal. (Tr. 385). In April 2012, she complained severe back pain which was getting worse. The back exam was noted to be normal. (Tr. 382). X-rays of the lumbar spine taken that month showed slight anterolisthesis of L4 on L5, facet arthropathy at L3-4 and L5-S1, and some mild end plate spurring within the lower lumbar region. The vertebral bodies were normal in height and the intervertebral disc spaces were adequately maintained. X-rays of the cervical spine showed minimal narrowing of the disc space at C5-6. (Tr. 391-392).

She complained of headaches in November 2013, but she had not been taking her blood pressure medication. (Tr. 378-381). She again complained of headache associated with high blood pressure readings in early December 2013. (Tr. 452-455). She was seen for COPD in March 2014. She had quit smoking and was using a nebulizer. Her liver enzymes were elevated. (Tr. 445). Pulmonary function testing showed early nonreversible obstructive airway disease. (Tr. 460). She was also seen in 2014 for management of her diabetes and transient episodes of dizziness and shingles. There was no mention of back pain, neck pain, or headaches at those visits. (Tr. 433-444).

In May 2015 plaintiff told her doctor she was going to apply for disability because of back and neck pain. No complaints were recorded regarding her neck or back, and the doctor did not include any observations regarding her neck or back in the exam or assessment portions of the office notes. That was the last visit with Dr. Sweet Friend. (Tr. 428-429).

Dr. Raymond Leung performed a consultative physical exam in July 2015. Plaintiff had decreased breath sounds but no rales, rhonchi, or wheezes. Her gait was within normal limits. She was able to walk 50 feet unassisted. She was able to tandem walk, heel walk, toe walk, and squat ¼ of the way down. She could not hop. Range of motion of the neck and lumbar spine were decreased. In the lumbar spine, flexion and extension were full, and she lacked 5 degrees of lateral flexion in both directions. In the cervical spine, flexion and extension were full. She lacked 20 degrees of lateral extension in both directions, 20 degrees of rotation to right, and 10 degrees of rotation to the left. She had a full range of motion of the hips. There was no muscle atrophy or spasms. Strength was full throughout. She had difficulty getting on and off the examining table. Sensation was within normal limits. (Tr. 470-475).

Plaintiff began seeing Dr. Brandon Cycholl for primary healthcare in October 2015. At the first visit, she told him she had arthritis and back pain. Examination of the neck was normal. Examination of the back showed tenderness of the lumbar spine with mild pain on range of motion. The doctor ordered lab work. (Tr. 478-480). In November 2015, plaintiff said she had pain from the neck to the tailbone, and that she had been diagnosed with arthritis and "degenerative disc." Examination of the neck was normal, and musculoskeletal exam showed tenderness in the thoracic spine. (Tr. 482-485).

An MRI of the lumbar spine was done in December 2015. Plaintiff gave a history of chronic low back pain with hip pain for 20 years following a lifting injury.

This study showed "very minimal" anterolisthesis of L4-5 due to facet arthritis, "mild" facet arthritis at L4-5 with no central canal stenosis or foraminal narrowing, and "very mild" disc degeneration at L5-S1 with "mild" disc bulge. (Tr. 505).

In January 2016, Dr. Cycholl referred her to pain management for her back pain. On that visit and a visit in February, her neck was normal on exam and she had mild pain with motion of the lumbar spine. (Tr. 486-490).

Dr. Cycholl saw plaintiff 3 more times through February 2017. On each visit, exam of the neck was normal and musculoskeletal exam showed normal extremities. There were no complaints of headache. (Tr. 491-504).

Plaintiff began seeing a pain management specialist, Dr. Bhaskara, in February 2016. She was seen about 11 times between February 2016 and April 2017. On the first visit, she complained of migraines, pain in her entire back and hips, radiating pain into her bilateral legs and feet, numbness and tingling in her feet and mid back, and weakness. On exam, there was tenderness in the lumbar spine with pain on extension, but no pain on flexion or lateral flexion. Straight leg raising was negative. She had a normal range of motion of the hips but Patrick's test was positive.[4] Sensation was intact and strength was normal. Diagnostic medial nerve blocks were administered in the lumbar spine in late February 2016. In March 2016, plaintiff reported pain relief for 5 or 6 days thereafter. On exam, she had pain to palpation at C3, 4, 5, and 6, and in the lumbar paraspinal area. In

[4] Patrick's test is a clinical maneuver performed during a medical exam to detect the presence of sacroiliac disease. See, https://medical-dictionary.thefreedictionary.com/Patrick%27s+sign, visited on August 29, 2018.

late March and April, Dr. Bhaskara performed lumbar facet denervation at several levels. Plaintiff reported 100% pain relief lasting about 2 months. He prescribed Topamax in July. In September, she reported that she was 50% better with Topamax and she wanted to titrate the dose. On this visit, Patrick's sign was negative, and range of motion testing was negative. She had some tenderness to palpation. The dosage of Topamax was increased. In March, she reported she was unable to tolerate Topamax. Another lumbar nerve block was scheduled. This was performed in late March 2017. The last visit was in April 2017, about 3 weeks later. She reported 100% relief of her back pain, but said she still had muscle spasms and her right hip "locked up" with activity. Her reported activities were aerobics, toning and stretching, yoga, container gardening, and housework. She was able to tolerate stretches without limitation, but right hip rotation was painful. On exam, her gait was antalgic but within normal limits. She was ambulatory without an assistive device. Her lungs were clear to auscultation with no wheezes, rhonchi, or crackles. Respirations were regular and unlabored. Her neck was supple. Grip strength was full and equal. Hip flexors were 5/5 bilaterally. Adduction and abduction were equal bilaterally. Patrick's sign was positive. Lumbar extension and rotation were "positive." Palpation to the lumbar area and SI joints was painful, as was right hip rotation. She was to return in 1 month for right hip injection. (Tr. 526-577).

**4. State Agency Reviewers' Opinions**

In October 2015, Martin Lahr, M.D., assessed plaintiff's RFC based on a

review of the records. In his opinion, plaintiff was able to do work at the light exertional level, limited to standing/walking for 4 hours a day and sitting for 6 hours a day, along with a number of postural and environmental limitations. (Tr. 108-110).

Two psychologists assessed the severity of plaintiff's alleged mental impairments. (Tr. 81-82; 106-107). They determined that she did not have a severe mental impairment.

## Analysis

Plaintiff first argues that the ALJ erred in giving great weigh to the opinions of the state agency consultants and in "discrediting" Dr. Leung's opinion.

Plaintiff's argument with regard to the two state agency consultants who assessed her mental impairments can be dismissed out of hand because she does not claim here that she has a severe mental impairment. Her arguments relate only to her physical impairments, and the two psychologists did not evaluate her physical RFC.

Plaintiff argues that it was error to rely on Dr. Lahr's opinion because his opinion was based on an incomplete record. Dr. Lahr reviewed the record in mid-October 2015, and plaintiff obviously underwent medical treatment after that date.

Plaintiff cites *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), suggesting that an ALJ errs in accepting an opinion of a non-examining reviewer "that occurred prior to the generation of a substantial portion of the record." See, Doc. 14, Ex.1,

p. 4. That is not the holding of that case. *Stage* held that the ALJ erred in accepting a reviewing doctor's opinion where the reviewer did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion." *Stage*, 812 F.3d at 1125. In a later case, the Seventh Circuit reiterated the rule. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

In *Stage*, new evidence indicated, for the first time, that the plaintiff needed a knee replacement. In *Moreno*, the new evidence consisted of a treating psychologist's office notes which documented "significant and new developments" in plaintiff's mental health. See also, *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018), where the new evidence included failed surgical attempts to treat the plaintiff's pain and an opinion by the treating neurosurgeon that the plaintiff's condition had deteriorated and he was no longer capable of even sedentary work.

In contrast, plaintiff here does not any identify any particular medical evidence as constituting "later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion." *Moreno*, *Ibid*. Instead, she makes a *quantitative* argument, i.e., that most of the medical treatment occurred after Dr. Lahr reviewed the evidence. But, cases such as *Stage*, *Moreno*, and *Lambert* set out a *qualitative* rule. It is not the sheer

volume of medical evidence created after the state agency consultant's review that makes his opinion less reliable, it is the contents of that evidence.

Plaintiff argues generally that the consultants did not see Exhibits 4F or 5F, that is, the records of Dr. Cycholl and of the pain management specialist. However, she points to nothing in those records that would qualify as the kind of new, significant, and potentially decisive evidence that is contemplated by *Stage, Moreno*, and *Lambert*. As is detailed above, Dr. Cycholl's records documented repeated findings of a normal neck and only mild pain in the lumbar spine. The pain management records document a normal or almost normal gait, negative straight leg raising, pain on palpation of the spine, and unspecified limitation of range of motion. The report of the MRI from December 2017 described "very minimal" anterolisthesis of L4-5 due to facet arthritis, "mild" facet arthritis at L4-5 with no central canal stenosis or foraminal narrowing, and "very mild" disc degeneration at L5-S1 with "mild" disc bulge.

Dr. Lahr accepted the premise that plaintiff had some degree of back pain and limitation of range of motion. That is why he suggested limiting plaintiff to work at the light exertional level with additional postural limitations. The same is true of the ALJ. See, Tr. 22. Plaintiff makes no attempt to demonstrate that anything contained in the records of Dr. Cycholl or the pain management specialist would be likely to cause Dr. Lahr to have changed his assessment.

Plaintiff suggests that the ALJ overlooked or ignored parts of the pain management records. She is incorrect. An ALJ is not required to discuss every

piece of evidence in the record, but, at the same time, the ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases. Here, contrary to plaintiff's suggestion, the ALJ did not ignore any evidence that undermined his conclusion. The ALJ acknowledged that the pain management specialist treated plaintiff with nerve bocks and lumbar denervation, and that plaintiff reported only short-term good results. (Tr. 22). The ALJ accepted plaintiff's claim that she had some back pain and limitation of motion, and accordingly limited her to light work with limited standing/walking and postural limitations. Plaintiff points to nothing in the pain management records that would undermine that assessment.

Plaintiff also argues that the ALJ erred in giving "limited weight" to Dr. Leung's opinion. The ALJ noted that Dr. Leung found that plaintiff had some limitation in her cervical and lumbar spine. He observed that Dr. Leung provided no functional analysis and said that he therefore gave "limited weight" to Dr. Leung's opinion. (Tr. 24).

Plaintiff has not demonstrated any error here. First, the ALJ was correct in saying that Dr. Leung did not offer a functional analysis, meaning that he did not assess plaintiff's ability to perform the physical requirements of work. Dr. Leung's role was to perform a physical examination and report his findings, which he did. Again, the ALJ accepted that plaintiff had physical limitations.

The Seventh Circuit has held that rejecting an agency examining doctor's

opinion "that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir 2014). But that is not what happened here. Dr. Leung found that, in the lumbar spine, flexion and extension were full, and that plaintiff lacked 5 degrees of lateral flexion in both directions. In the cervical spine, flexion and extension were full. She lacked 20 degrees of lateral extension in both directions, 20 degrees of rotation to right, and 10 degrees of rotation to the left. (Tr. 474). Dr. Leung did not come close to opining that plaintiff is disabled.

For her second point, plaintiff argues that the ALJ failed to follow SSR 16-3p in that he failed to articulate why he discounted her subjective complaints and failed to properly assess the medical opinions. Her point about the medical opinions has already been discussed above.

SSR 16-3p supersedes the previous SSR on assessing a claimant's credibility. SSR 16-3p was republished in October 2017 and can be found at 2017 WL 5180304. SSR 16-3p became effective on March 28, 2016, and should be applied by the ALJ in any case decided on or after that date. 2017 WL 5180304, at *1.

SR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." *Ibid.*, at *2. "Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators

will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *Ibid.*, at *11. SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid.*, at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding his symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

The ALJ is required to give "specific reasons" for his findings in this area. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Ibid.* See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

Plaintiff completely ignores the ALJ's explanation for discounting her subjective claims. As required by § 404.1529 and SSR 16-3p, he considered the

objective medical evidence, including x-rays and MRI; the course of her treatment; the findings of the various doctors on physical exams; the lack of complaints of headache to her doctors; her daily activities; and the medical opinions. (Tr. 21-24). Plaintiff does not argue that the ALJ erred in his consideration of any of these factors except the medical opinions, and that point has already been discussed above. In short, the ALJ's conclusion was supported by the evidence and was not "patently wrong;" it must therefore be upheld. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). ALJ Yoder's decision is supported by substantial evidence, and so must be affirmed.

Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Yoder committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: August 30, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**